1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   GAIL BENNETT–WOFFORD, et al.,                Case No.  15–cv–02445–SI

Plaintiffs,

8

9       v.                                       **ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANT'S
10  BAYVIEW LOAN SERVICING, LLC,                  MOTION TO DISMISS**

Defendant.                                   Re: Dkt. No. 22

11

12

13          Now before the Court is defendant Bayview Loan Servicing, LLC's motion to dismiss.

14  Dkt. No. 22.  Having carefully considered the papers submitted, the Court hereby rules as follows.

15

16                                    **BACKGROUND**

17          In August 2005, plaintiffs Gail Bennett-Wofford, Dana Wofford, and Mark Wofford

18  (collectively, "plaintiffs") acquired real property located at 3344 and 3345 Lakeshore Boulevard in

19  Lakeport, California ("the property") from Anthony W. Trevellick.  Dkt. 1-1 at 4.  Plaintiffs

20  executed a promissory note and deed of trust in favor of Trevellick whereby plaintiffs were to

21  make monthly payments of $3,297.53.  *Id.* at 4-5.  The note required that payments be made by the

22  twelfth of each month.  *Id.* at 42.  The deed of trust also required plaintiffs to maintain fire

23  insurance on the property.  *Id.* at 5.

24

25

26

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  **I.      *Bayview I***

2         In 2007, defendant Bayview Loan Serving, LLC ("Bayview"), a Delaware limited liability

3  company, purchased the note and deed of trust from Trevellick and then transferred certain

4  portions of that interest to other parties that were unknown to plaintiffs at the time.  Dkt. 1-1 at 5.

5  In August 2007, Bayview allegedly imposed a forced placed insurance policy for hazard and flood

6  coverage on the property.  *Id.*  Plaintiffs continued making their originally agreed upon monthly

7  payments of $3,297.53.  *Id.*  However, one of defendant's agents, M&T Bank, allegedly alerted

8  plaintiffs that the total amount due per month had risen to $8,345.50 due to the forced placed

9  insurance policy.  *Id.*  Although plaintiffs continued to submit monthly payments of $3,297.53,

10  defendant allegedly sent several notices of default to plaintiffs from January 2009 to November

11  2009.  *Id.* at 5-6.  Plaintiffs believed that defendants were imposing improper loan fees and

12  charges in order to place plaintiffs in default, allowing defendant to foreclose on the note

13  obligation.  *Id.* at 5.  In December 2009, plaintiffs brought suit against defendant in the Northern

14  District of California for breach of contract, negligent misrepresentation, fraud, unfair business

15  practices, and injunctive relief.  *Wofford v. Bayview Loan Servicing, LLC*, No. 3:09-cv-06016

16  ("*Bayview I*"), Dkt. 1 (Compl.).

17         On July 27, 2010, the parties settled *Bayview I.*  Order Dismissing Case with Prejudice,

18  *Bayview I*, Dkt. 47.  Without admitting liability or any wrongdoing, defendant agreed to

19  immediately cancel the forced placed flood and hazard insurance policies and agreed to waive any

20  amounts plaintiffs owed arising from such insurance policies.  Dkt. 1-1 at 14, Exh. 2 ("*Bayview I*

21  settlement agreement").  Defendant also agreed not to impose any future flood insurance charges

22  on plaintiffs.  *Id.* at 15.  Furthermore, defendant was to provide an amortized schedule, reconciling

23  plaintiffs' account to show that plaintiffs were current on all principal and interest payments

24  through July 12, 2010.  *Id.*  Going forward, defendant was also to "establish a customary

25  documentation system for payment of the monthly loan obligation so that plaintiffs no longer

26  [had] to rely on wire transferring their monthly loan payments to [defendant] — (*i.e.* a monthly

27  statement)."  *Id.*  In exchange, plaintiffs were to release their claims and dismiss the lawsuit.  *Id.* at

28  16.

United States District Court
Northern District of California

**II.   *Bayview II***

On August 8, 2012, plaintiffs brought another suit against defendant in the Northern District of California alleging similar causes of action to *Bayview I* — breach of contract, negligent misrepresentation, fraud, unfair business practices, and injunctive relief.  *Wofford v. Bayview Loan Servicing, LLC*, No. 1:12-cv-04167 ("*Bayview II*"), Dkt. 1 (Compl.).

In *Bayview II*, plaintiffs alleged that they never received the regular monthly statements as agreed upon from the settlement agreement in *Bayview I* but continued to make timely payments from July 2010 through April 2012.[1]  Dkt. 1 at 4.  Plaintiffs were late on their May 2012 payment but made a payment of $6,792.91 on June 18, 2012, to cover the May 2012 payment ($3,297.53), the late charge for May 2012 ($197.85), and the June 2012 payment ($3,297.53).  *Id.*  On May 29, 2012, defendant allegedly sent a notice of default for failure to pay the May 2012 payment of $3,740.00 and sought a "Corporate Advance" fee of $4,264.80.  *Id.*  Plaintiffs then received a "Loan Summary" dated June 26, 2012 that stated the property had forced placed insurance and included a line item for "Insurance Paid" of $7,536.66.  *Id.*  Plaintiffs allegedly reached out to defendant regarding these charges but never received a substantive response.  *Id.*

Plaintiffs dismissed *Bayview II*, with prejudice, on March 11, 2013 following another settlement agreement.  Stipulation for Dismissal of Entire Action & Order, *Bayview II*, Dkt. 22.  In a settlement agreement dated February 22, 2013, again without admitting liability, defendant agreed — in plainer terms than the agreement in *Bayview I* — to provide plaintiffs with a monthly billing statement on or before the twentieth of each month preceding the month in which the next payment is due.  Dkt. 1-1 at 34, Exh. 4 ("*Bayview II* settlement agreement").  In exchange, plaintiffs again agreed to release claims that arose from:

> [P]ast violations of the terms of the note obligation and deed of trust, the forced placed policy of insurance for hazard and flood coverage, various notices of default, improper charges, fees, penalties, assessments, premiums and interest, and/or failure to provide documentation and information to the borrowers about the status of the loan and alleged default.

*Id.* at 35.  The release did not include any new claims arising under the *Bayview I* settlement

---

[1] Plaintiffs define "timely" as having paid before the ten-day grace period expired, *i.e.* by the 22nd of each month.

3

1    agreement.  *Id.*   The settlement agreement did not mention what, if anything, happened to the

2    alleged improperly assessed late fees, the "Corporate Advance Fee," and the $7,536.66 "Insurance

3    Paid."

4

5    **III.    The Present Suit**

6           On February 25, 2013, shortly after the *Bayview II* settlement agreement, defendant sent a

7    Delinquency Notice to plaintiffs in the amount of $5,616.93.  Compl. ¶ 11 at p. 5.[2]  Plaintiffs

8    allege that they continued to make regularly monthly payments but still received delinquency

9    notices.   *Id.*   On April 25, 2013, plaintiffs received a billing statement totaling $6,792.91:

10   "$3,391.18 for insurance along with a $197.85 late fee and a 'Corporate Advance Fee' of

11   $2,284.60."[3]  *Id.*  On April 29, 2013, plaintiffs received a Notice of Default claiming a past due

12   amount of $6,319.98.  *Id.*

13          Almost a year later, on March 20, 2014, plaintiffs allegedly made a wire transfer to

14   defendant for the March 2014 monthly payment. Compl. ¶ 11 at p. 4. On March 28, 2014,

15   plaintiffs received a Delinquency Notice stating that the March 2014 payment was past due, and

16   that they had been assessed a late fee and another "Corporate Advance Fee."  *Id.*  On April 2,

17   2014, plaintiffs' bank informed plaintiffs that their wire transfer to defendant had been returned to

18   their account.  *Id.*  Plaintiffs contacted defendant through its attorney and eventually, defendant

19   accepted payment and removed the delinquency status of the loan.  *Id.*

20          From October 2014 to April 2015, plaintiffs continued to receive several Delinquency

21   Notices and Notices of Default claiming varying amounts from defendant.[4]  Compl. ¶¶ 11–30.

22   Plaintiffs allege that on at least two other occasions — December 11, 2014 and February 13, 2015

23   — they received a return wire transfer, in the amount of $3,297.53 each time, from their bank on

24

25          [2] Paragraph eleven of the complaint continues on for eight paragraphs.  For purposes of
     this motion, the Court will cite to a page number when citing to allegations made in paragraph
26   eleven.  In any future amended complaints, plaintiffs should correctly number any unnumbered
     paragraphs (including those following paragraphs eight and eleven).
27          [3] The Court notes these amounts do not add up to the total alleged in the billing statement.
            [4] The Court is uncertain as to which of these letters were meant to serve as reminders for
28   past due monthly payments and which were separate notices for past due insurance charges and
     "Corporate Advance Fees."

United States District Court
Northern District of California

1 payments made to the defendant.

2       On June 2, 2015, plaintiffs brought the present suit against defendant for breach of

3 contract, deliberate misrepresentation, fraud, mail fraud, unfair practices, and wire fraud.

4 Plaintiffs believe that defendant is attempting to accelerate the loan through a "late fee scam" such

5 that defendant may foreclose on plaintiffs. Compl. ¶ 11 at p. 4. Unlike *Bayview I* and *Bayview II*,

6 plaintiffs proceed *pro se* in the present suit.

7

8                                  **LEGAL STANDARD**

9       Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

10 if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

11 dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

12 face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard

13 requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

14 has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must assume that

15 the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.

16 *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, "recitals of the elements of a

17 cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678

18 (citing *Twombly*, 550 U.S. at 555). As a general rule, the Court may not consider materials

19 beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668,

20 688 (9th Cir. 2001). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts

21 that [it] has not alleged." *Associated Gen. Contractors of California, Inc. v. California State*

22 *Council of Carpenters*, 459 U.S. 519, 526 (1983). In *pro se* filings, the plaintiff must still plead

23 plausible facts set by the standard set in *Iqbal*, but the Court will construe *pro se* pleadings more

24 liberally. *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010).

25       If the Court dismisses a complaint, it must decide whether to grant leave to amend. The

26 Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no

27 request to amend the pleading was made, unless it determines that the pleading could not possibly

28 be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

United States District Court
Northern District of California

1   (citations and internal quotation marks omitted).

2

3                                   **DISCUSSION**

4   **I.        No Incorporation of the Factual Allegations in *Bayview I* and *Bayview II***

5          At the outset, the Court notes that plaintiffs attempt to incorporate wholesale the factual

6   allegations from *Bayview I* and *Bayview II* by attaching their respective complaints as exhibits to

7   the present complaint.  *See* Dkt. 1-1.  While "a court may take judicial notice of the existence of

8   matters of public record, such as a prior order or decision," it should not take notice of "the truth

9   of the facts cited therein."  *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal.

10  2006) (citations omitted).  "[T]aking judicial notice of findings of fact from another case exceeds

11  the limits of Rule 201."  *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003), *overruled on*

12  *other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014); *see also M/V Am. Queen v. San*

13  *Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("[A] court may not take

14  judicial notice of proceedings or records in another case so as to supply, without formal

15  introduction of evidence, facts essential to support a contention in a case then before it").

16         While plaintiffs may have been attempting to save time and space by incorporating the

17  factual allegations in the prior complaints by reference, under the circumstances of this case the

18  record will be far clearer if plaintiffs allege (or re-allege) exactly those facts that they are suing for

19  in this lawsuit.  The Court therefore directs that plaintiffs must restate any relevant allegations

20  made in *Bayview I* and *Bayview II* in any future amended complaint.

21         Assuming that plaintiffs will cure this deficiency, the Court makes the following findings

22  on the merits of the motion below.

23

24  **II.       Breach of Contract**

25         Plaintiffs contend that defendant has breached the *Bayview I* settlement agreement by

26  failing to provide plaintiffs with "regular, timely[,] and accurate monthly accountings of the

27  Plaintiffs' ongoing obligations," failing to provide any documentation establishing that defendant

28  "is a holder in due course," continuing to issue default/late notices, and threatening foreclosure

United States District Court
Northern District of California

United States District Court
Northern District of California

1     action despite the assertion that plaintiffs' account is "paid as agreed." Compl. ¶¶ 32–36.

2     Plaintiffs also argue that defendant has breached the *Bayview II* settlement agreement because it

3     continued its failure to provide timely and accurate accounting statements, improperly imposed

4     default fees and late fees, and wrongfully charged increased principal and interest fees. *Id.* ¶¶ 38–

5     39.

6           Defendant contends that the breach of contract claim must be dismissed because plaintiffs

7     attempt to combine two purported contracts within one claim, plaintiffs fail to allege their

8     performance or excuse for non-performance of the contract, plaintiffs fail to allege when the

9     alleged breaches occurred, and lastly, the alleged conduct does not amount to a breach of the

10    provisions of the settlement agreements. Dkt. 22 at 4-7. The Court will address each of these

11    arguments in turn.

12

13           **A.      Two Purported Contracts Within One Claim**

14           Defendant argues that the breach of contract claim must be dismissed because it attempts

15    to combine two purported contracts into one claim. *Id.* at 4. In support of its argument, defendant

16    relies on *Leader v. Health Indus. of Am., Inc.*, 89 Cal. App. 4th 603, 608 (2001). Dkt. 22 at 4.

17    The trial court in *Leader* sustained a demurrer because there were allegations of multiple contracts

18    within a single cause of action. *Leader*, 89 Cal. App. 4th at 608. However, as plaintiffs aptly

19    point out, the demurrer was sustained because of "uncertain[ty] as to the identity of the parties to

20    and operative terms of the various agreements, and as to whether those agreements were written,

21    verbal, implied in fact or law." *Id*; see Dkt. 23 at 3.

22           Contrary to defendant's assertion, "Several contracts relating to the same matters, between

23    the same parties, and made as parts of substantially one transaction, are to be taken together." Cal.

24    Civ. Code § 1642. The *Bayview I* and *Bayview II* settlement agreements are both intended to

25    apply to the parties in this case. The *Bayview II* settlement agreement arose from problems with

26    performance of the *Bayview I* settlement agreement and both are largely based on similar alleged

27    conduct: improper forced placed insurance policies, improperly assessed late fees, and lack of

28    monthly billing notices. Accordingly, the Court finds that these agreements may be taken

1    together.

2            Defendant argues that there is uncertainty as to which contract is being referenced to in

3    paragraphs 32 through 29 of the Complaint.  However, the *pro se* complaint is far from uncertain

4    as to the operative terms of the two agreements.  Paragraphs 32 to 37 of the Complaint refer to the

5    *Bayview I* settlement agreement whereas paragraphs 38 and 39 refer to the terms of the *Bayview II*

6    settlement agreement.  Furthermore, in arguing latter portions of its motion, defendant is able to

7    correctly identify which agreements are being referenced in the complaint.  *See* Dkt. 22 at 6-7.

8            Defendant also claims that more uncertainty was created by plaintiffs' opposition to the

9    current motion to dismiss, where plaintiffs argue that "allegations set forth in Case No. CV 09

10   6016 JCS (Exhibit 1) and its subsequent settlement agreement (Exhibit 2; CV 12 4167 NJV

11   (Exhibit 3), and its subsequent settlement agreement (Exhibit 4) are precisely the acts complained

12   of in this third litigation."  Dkt. 30 at 5 (citing to Dkt. 23 at 3).  Construing plaintiffs' *pro se*

13   allegations liberally, plaintiffs have adequately identified the references they are attempting to

14   make.  As described in plaintiffs' exhibit list, Exhibit 1 is the complaint from *Bayview I* and

15   Exhibit 2 is the *Bayview I* settlement agreement;  Exhibit 3 is the complaint from *Bayview II* and

16   Exhibit 4 is the *Bayview II* settlement agreement.  Plaintiffs have clearly alleged that the conduct

17   complained about in *Bayview I* and *Bayview II* has continued into the present suit.[5]

18           Defendant also asserts in its reply that further uncertainty was caused by plaintiffs'

19   reference in their opposition papers to the fact that "the contracts were verbal as opposed to oral."

20   Dkt. 30 at 4 (quoting Dkt. 23 at 3).  The Court is certain that plaintiffs meant to state that the

21   contracts were *written* as opposed to verbal because both of the *written* settlement agreements are

22   attached to the complaint.  *See* Dkt 1-1 at 12-22, 32-40.  Plaintiffs should, however, clarify this in

23   any amended complaint.

24           In conclusion, the reasoning in *Leader* does not apply here because there is no uncertainty

25   as to the parties or the operative terms of the agreements.  However, plaintiffs are ordered to

26

27           [5] As discussed above, plaintiffs may not incorporate allegations from their prior lawsuits
28   into the present complaint through attachments and should make these specific factual allegations
     in the body of any future amended complaints.

United States District Court
Northern District of California

1    amend their complaint to incorporate the specific paragraphs from the prior complaints (*Bayview* I

2    and *Bayview II*) and settlement agreements upon which they wish to sue here; their allegations

3    should be clear and specific as to which contracts arose from which lawsuits, what obligations the

4    purported contracts imposed on the parties, and what conduct (or omissions) resulted in breach of

5    those obligations.

6

7            **B.      Failure to Allege Performance or Excuse for Non-Performance**

8            Defendant argues that plaintiffs fail to allege performance or excuse for non-performance

9    as required for a breach of contract claim under California law.  Dkt. 22 at 6; *see Oasis West*

10   *Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2001) ("[T]he elements of a cause of action for

11   breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for

12   nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.").

13   Plaintiffs assert that the settlement agreements only imposed a duty upon defendant and not

14   plaintiffs.  Dkt. 23 at 4.

15           The existence of a contract requires sufficient cause or consideration.  Cal. Civ. Code.

16   § 1550.  Sufficient consideration requires that duties be imposed on both defendant *and* plaintiffs

17   in order for the settlement agreements to be valid contracts.  Here, the settlement agreements

18   imposed obligations on both parties.

19           The *Bayview I* settlement agreement provides that the parties "shall cause the dismissal of

20   the Complaint with prejudice" and that they shall "release and discharge each other . . . of any and

21   all claims set forth in paragraphs 8(a) and 8(b)."  Dkt. 1-1 at 15.  Although the Court can discern

22   from the docket that *Bayview I* was ultimately dismissed with prejudice, it is improper for a court

23   to assume "the [plaintiff] can prove facts that [it] has not alleged."  *Associated Gen. Contractors*

24   *of California*, 459 U.S. at 526.  Nowhere in its complaint do plaintiffs allege that they dismissed

25   *Bayview I* with prejudice.  Accordingly, the Court finds that plaintiffs have failed to allege

26   performance or excuse for non-performance as to the *Bayview I* settlement agreement.  To state a

27   claim, plaintiffs must allege performance (e.g., dismissal with prejudice) or excuse for non-

28   performance as to the *Bayview I* settlement agreement in any future amended complaint.

1    The *Bayview II* settlement agreement provides that "plaintiffs, through counsel, shall cause

2    the dismissal of the Complaint with prejudice" and that the parties shall "release and discharge

3    each other . . . of any and all claims as set forth in paragraphs 4(a) and 4(b)." Dkt. 1-1 at 34-35.

4    As to the *Bayview II* settlement agreement, the plaintiffs have properly alleged performance.

5    Plaintiffs allege that "The case was dismissed on March 11, 2013." *See* Compl. ¶ 11 at p. 5.

6    Accordingly, the Court finds that plaintiffs have properly alleged performance as to the *Bayview II*

7    settlement agreement.

8

9    ### C.    Failure to Allege When Breaches Occurred

10    Defendant contends that plaintiffs fail to allege when the breaches occurred. Dkt. 22 at 6.

11    However, defendant cites to no authority in support of its contention, and plaintiffs have alleged

12    specifically throughout their complaint the various dates when they received documents from

13    defendant representing the various breaches, including improper Delinquency Notices and late

14    charges and delayed monthly billing statements.

15    Accordingly, the motion to dismiss on this point is denied.

16    ### D.    Alleged Conduct is a Breach

17    Defendant asserts that the conduct alleged in the complaint is not a breach of the

18    provisions outlined in the *Bayview I* and *Bayview II* settlement agreements. Dkt. 22 at 6. In their

19    complaint, plaintiffs allege breaches of certain paragraphs in each settlement agreement.

20    Specifically, plaintiffs allege that defendant breached paragraphs 5 and 8(a) of the *Bayview I*

21    settlement agreement by failing to provide monthly billing statements and failing to establish that

22    defendant "is a holder in due course." Compl. ¶¶ 32, 34. Plaintiffs allege defendant breached

23    paragraphs 2 and C of the *Bayview II* settlement agreement by continuing to fail to send monthly

24    billing statements and improperly imposing fees. *Id.* ¶¶ 38–39.

25    More broadly, the actions alleged by plaintiffs could constitute a variety of breaches of the

26    *Bayview I* and *Bayview II* settlement agreements. For example, Paragraph 5 of the *Bayview I*

27    settlement agreement reads as follows:

28

United States District Court
Northern District of California

10

1

2

3

> Bayview shall . . . (a) provide an amortized schedule reconciling plaintiffs' account showing that it is current on all principal and interest payments and shall also provide a statement confirming that the account is current through July 12, 2010 . . . and (b) establish a customary documentation system for payment of the monthly loan obligation so that plaintiffs no longer have to rely on wire transferring their monthly loan payments to Bayview — (*i.e.* a monthly statement).

4

5

6

7

Dkt 1-1 at 15.  Plaintiffs allege that after checking their credit scores, defendant "had never corrected the negative credit reporting against Plaintiffs for the period of January 2009 through June 2010."  Compl. ¶ 15.  The alleged failure to update plaintiffs' account status could amount to a breach of clause (a).

8

9

10

11

12

13

14

Paragraphs 3 and 4 of that settlement agreement provide that defendant would immediately cancel any forced placed insurance policies on the property, and would not impose or charge plaintiffs any future flood insurance charges going forward.  Dkt. 1-1 at 14-15.  Yet, in April 2013, plaintiffs allegedly received a billing statement for "Insurance Paid to Date."  Compl. ¶ 11 at p. 5.  If defendant charged the plaintiffs for such insurance, it could amount to a breach of the settlement agreement.  Accordingly, the Court finds that the conduct alleged in the complaint plausibly breaches the terms agreed to in *Bayview I*.

15

16

17

18

19

20

21

22

23

As to the *Bayview II* settlement agreement, Paragraph 2 of that agreement provides that defendant "will provide plaintiffs with a monthly billing statement regarding plaintiffs' loan obligation on or before the 20th of every month preceding the month in which the next payment is due."  Dkt. 1-1 at 34.  Defendants have allegedly been late on more than one occasion with their monthly billing statement obligation.  Furthermore, plaintiffs have alleged that defendant is improperly assessing default fees, late fees, and "Corporate Advance Fees."  Therefore, as alleged, defendants have breached the settlement agreement by failing to provide timely and accurate accounting statements to plaintiffs.  Accordingly, the Court finds that the conduct alleged in the complaint plausibly breaches the terms agreed to in *Bayview II*.

24

25

26

### III.    Claims for Deceit and Fraud

27

28

Plaintiffs' second and third causes of action are for "Deliberate Misrepresentation/Deceit" and "Fraud/Concealment," respectively.  Compl. ¶¶ 40–51.  Defendant believes that plaintiffs are

United States District Court
Northern District of California

1    trying to allege common law fraud and in doing so, defendant argues that plaintiffs' allegations

2    fail for lack of specificity.  Dkt. 22 at 8.

3

4        **A.       Rule 9(b) Heightened Pleading Standard for Allegations of Fraud**

5            For allegations of fraud or mistake, a complaint must meet the heightened pleading

6    standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances

7    constituting fraud or mistake." Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and

8    other conditions of a person's mind may be alleged generally."  *Id.*  Fraud or mistake can be

9    averred specifically, or by alleging facts that necessarily constitute fraud, unilateral mistake, or

10   mutual mistake (even if those terms are not explicitly stated).  *Vess v. Ciba–Geigy Corp. USA*, 317

11   F.3d 1097, 1105 (9th Cir. 2003).   Rule 9(b) is satisfied if the allegations "identif[y] the

12   circumstances constituting fraud (or mistake) so that the defendant can prepare an adequate

13   answer from the allegations."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th

14   Cir. 1989).  "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess*, 317

15   F.3d at 1103.

16

17       **B.       Claim Two: Deliberate Misrepresentation/Deceit**

18           Plaintiffs' second and third causes of action appear to state a claim for common law fraud

19   and deceit as codified under California Civil Code §§ 1709 and 1710.  *See* Compl. ¶¶ 40–51.  It is

20   unclear to the Court if plaintiffs are alleging their third cause of action under a separate legal

21   theory.  *See id.* ¶¶ 45–51.  For the purposes of this motion, the Court will assume that both causes

22   of action fall under §§ 1709 and 1710.

23           Defendant argues that plaintiffs' claim must be dismissed for lack of specificity.  Dkt. 22 at

24   8.   This Court must analyze the complaint under the federal pleadings standards set forth by

25   *Twombly*, *Iqbal*, and Federal Rule of Civil Procedure Rule 9(b), as discussed *supra*.

26           Under California law, the elements of fraud are: (1) misrepresentation of a material fact

27   (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity; (3)

28   intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5)

United States District Court
Northern District of California

12

1    resulting damage.  *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App.

2    4th 445, 481 (1998); *see also Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

3          Although ambiguously drafted, the complaint appears to allege that defendant induced

4    plaintiffs to dismiss their lawsuit and agree to a settlement when defendant had no intention of

5    following through with its settlement obligations.  Compl. ¶¶ 41-51.  However, the Court is unable

6    to determine whether the claim is for inducing plaintiffs in dismissing their case, or if the claim is

7    for defendant's fraudulent conduct following the settlement agreement.

8          Accordingly, the claim must be dismissed for failing to meet the heightened pleading

9    standard required for fraud under Rule 9(b).  In any future amended complaints, plaintiffs should

10   allege (1) the material misrepresentations of fact defendant made to plaintiffs; (2) facts that show

11   defendant knew these misrepresentations were false; (3) facts that show defendant intended to

12   deceive and induce plaintiffs; (4) that plaintiffs justifiably relied on the misrepresentations and

13   acted accordingly; and (5) the resulting damages.

14

15          **C.      Claim Three: Fraud/Concealment**

16          It is unclear if plaintiffs intend to bring this claim under a separate legal theory or if they

17   intend to combine the claim with their second cause of action under California Civil Code §§ 1709

18   and 1710.  *See* Compl. ¶¶ 45–51  If plaintiffs intend to bring this claim as a separate cause of

19   action, they must allege specifically under what legal theory they intend to pursue the third cause

20   of action in any future amended complaint — as they did for their second and fifth causes of

21   action.

22

23   **IV.      "Unfair Practices"**

24          Plaintiffs' fifth cause of action asserts a claim for "Unfair Practices," and alleges that

25   defendant violated two provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.

26   § 1692e ("False or Misleading Representations") and 1692f ("Unfair Practices"), by repeatedly

27   misrepresenting amounts owed and making payment demands when it knew additional payments

28   were not owed.  *Id.* ¶¶ 56–57.  Defendant argues that plaintiffs fail to state a claim because it is not

United States District Court
Northern District of California

13

1    a "debt collector" as defined under § 1692a of the Debt Collection Practices Act.  Dkt. 22 at 10-

2    13.[6]

3           Defendant argues that it is not a "debt collector" within the meaning of § 1692a because it

4    falls into the exception under § 1692a(6)(F), since it is collecting on a debt that it is owed rather

5    than collecting on the outstanding debt of another.  Dkt. 22 at 11.

6           15 U.S.C § 1692a(6) defines a "debt collector" as:

7           [A]ny person who uses any instrumentality of interstate commerce or the mails in
            any business the principal purpose of which is the collection of any debts, or who
8           regularly collects or attempts to collect, directly or indirectly, debts owed or due or
            asserted to be owed or due another.  Notwithstanding the exclusion provided by
9           clause (F) of the last sentence of this paragraph, the term includes any creditor who,
            in the process of collecting his own debts, uses any name other than his own which
10          would indicate that a third person is collecting or attempting to collect such debts.

11   A "debt collector" does not include:

12          [A]ny person collecting or attempting to collect any debt owed or due or asserted to
            be owed or due another to the extent such activity (i) is incidental to a bona fide
13          fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which
            was originated by such person; (iii) concerns a debt which was not in default at the
14          time it was obtained by such person; or (iv) concerns a debt obtained by such
            person as a secured party in a commercial credit transaction involving the creditor.
15
     15 U.S.C. §1692a(6)(F).
16
            Plaintiffs allege that defendant is in fact a debt collector, Compl. ¶ 56, and in their
17
     opposition papers, plaintiffs point to an August 24, 2015 letter on defendant's letterhead, from
18
     defendant addressed to plaintiffs, regarding a notice of default on plaintiffs' loan.  That document
19
     states "Bayview Loan Serving, LLC is a debt collector."  *See* Dkt. 23, Ex.1.
20
            The issue of defendant's status as a debt collector is a factual dispute that is inappropriate
21
     for resolution at the pleadings stage.  In a motion to dismiss, the Court must draw all reasonable
22
     inferences in the plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.
23

24          _____

25          [6] Defendant also argues that, to the extent that plaintiffs intend to make a claim for "Unfair
     Practices" under California Business and Professions Code § 17200 ("the UCL"), the claim must
26   fail because the underlying §1692 claim fails.  Dkt. 22 at 10-13.  However, nowhere in the
     complaint do plaintiffs refer to § 17200, nor have plaintiffs asserted a claim under § 17200.  Thus
27   this argument need not be addressed at this time.

28

United States District Court
Northern District of California

1    1987).  Accordingly, for the purposes of the present motion, the defendant must be considered a

2    debt collector within the meaning of § 1692a.

3        Further, to the extent that plaintiffs assert a claim under the "Unfair Business Practices"

4    prong of California Business and Professions Code § 17200 (California's Unfair Competition Act)

5    based on these federal violations, such a claim has been adequately alleged.  *See Roskind v.*

6    *Morgan Stanley Dean Witter & Co.*, 80 Cal. App. 4th 345, 352 (Cal Ct. App. 2000) ("[C]ase

7    authority clearly provides that violation of a federal law may serve as a predicate for a section

8    17200 action.").

9        Accordingly, the motion to dismiss the fifth cause of action, as framed, is denied.

10    However, plaintiffs must amend to properly allege diversity jurisdiction as set out in part VI,

11    below.

12

13    **V.    Mail Fraud and Wire Fraud**

14        In their fourth and sixth causes of action, plaintiffs allege claims for Mail and Wire Fraud

15    under 18 U.S.C. §§ 1341 and 1343.  Compl. ¶¶ 52–54, 59–60, Dkt. 1.  Defendants assert, and

16    plaintiffs now concede, that these criminal statutes do not confer a private right of action.  *Cobb v.*

17    *Brede*, No. C 10–03907, 2012 WL 33242, at *2 (N.D. Cal. Jan. 6, 2012) (noting that 18 U.S.C. §§

18    1341 and 1343 "are the federal criminal statutes for mail and wire fraud . . . [that] do not provide

19    litigants with a private right of action."), *aff'd*, 517 Fed. Appx. 556 (9th Cir. 2013); *see* Dkt. 22 at

20    9-10, Dkt. 23 at 1-2.

21        Accordingly, the fourth and sixth causes of action are DISMISSED with prejudice.[7]

22

23    **VI.    Subject Matter Jurisdiction**

24        Plaintiffs have alleged, *inter alia*, subject matter jurisdiction through diversity under 28

25    U.S.C. § 1332 as to its state law claims.  Plaintiffs allege that defendant is a limited liability

26    company formed in the state of Delaware.  Compl. ¶ 2.  However, plaintiffs have *not* alleged

27

28        [7] Having dismissed these claims with prejudice, the Court hereby DENIES as moot plaintiffs' request for leave to dismiss these counts.

United States District Court
Northern District of California

15

1    anywhere in their complaint the state in which they reside in order to establish diversity of

2    citizenship. They must add an allegation as to their residence. Further, diversity jurisdiction

3    requires an amount-in-controversy of at least $75,000. 28 U.S.C. § 1332(a). This means that the

4    total amount of damages sought must plausibly exceed $75,000.00, exclusive of costs and

5    interests,

6         There are currently no factual allegations in the complaint supporting the total amount in

7    controversy, or concerning the plaintiffs' residence/domicile and, accordingly, the first, second,

8    and third causes of action for the California state law claims must be dismissed for lack of subject

9    matter jurisdiction, with leave to amend.

10        If plaintiffs seek to establish proper subject matter jurisdiction through diversity in any

11   future amended complaint they must (1) allege either in the body or in the caption of their

12   complaint that they are residents of a state other than Delaware and (2) seek damages exceeding

13   $75,000.00, exclusive of costs and interest.

14

15                                      **CONCLUSION**

16        For the foregoing reasons and for good cause shown, the Court hereby **GRANTS**

17   defendant's motion to dismiss, with leave to amend, as to the first, second, third and fifth causes of

18   action. The Court **GRANTS**, with prejudice, defendant's motion to dismiss as to the fourth and

19   sixth causes of action for Mail Fraud and Wire Fraud.

20        Plaintiffs may wish to seek litigation help by calling (415) 782-8982 or by signing up for

21   an appointment on the 15th Floor, Room 2796. Plaintiffs can speak with an attorney who will

22   provide basic legal help, but not legal representation.

23        **Any amended complaint shall be filed no later than January 15, 2016.**

24        **IT IS SO ORDERED**.

25   Dated:   December 11, 2015

26   _____

27   SUSAN ILLSTON
     United States District Judge

28

United States District Court
Northern District of California

16